# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**HELANA BOWE**,

    Plaintiff,                                 **CASE NO:**

vs.                                           **HON:**

**CITY OF FERNDALE,** a Michigan
Municipal Corporation, **CHIEF OF
POLICE DENNIS EMMI, OFFICER
STEPHEN WROE, OFFICER ANDREW
WROTH, SERGEANT LAUREN ZYROWSKI,**
jointly and severally,

    Defendants.

---

**CAIR-MICHIGAN LEGAL FUND**
By: Amy V. Doukoure (P80461)
Attorney for Plaintiff
1905 S. Haggerty Rd. Suite 105
Canton, MI 48188
(248) 559-2247 Phone
adoukoure@cair.com

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES,** Plaintiff, HELANA BOWE ("Plaintiff" or "Ms. Bowe"), by and through her counsel, CAIR-MI LEGAL FUND, by Amy V. Doukoure ("CAIR-MI"), and brings this action against CITY OF FERNDALE ("Defendant Ferndale"), CHIEF OF POLICE DENNIS EMMI, OFFICER JOSHUA LITTLE, OFFICER STEPHEN WROE, OFFICER ANDREW WROTH, SERGEANT LAUREN ZYROWSKI , for damages and declaratory and injunctive relief to enjoin all Defendants from implementing a photograph policy requiring the removal of all religious wear, and enjoin all Defendants from creating a permanent public record of images of women without their religious headwear, enjoin Defendants from disseminating images of women without their religious headwear, and enjoin Defendants from engaging in unnecessary gross gender searches and for the substantial burden on religious practice that is directly prohibited by the Religious Land Use and Institutionalized Persons Act, 42 U.S.C.§ 2000cc *et seq.* ("RLUPIA") committed by all Defendants when (1) Ms. Bowe was forcefully required to remove her religious headwear to take a booking photograph in the presence of male officers, (2) a permanent public record of Ms. Bowe's image without her religious headwear was created (3) Ms. Bowe's image without her religious headwear was disseminated via a public information request and (3) Ms. Bowe was subjected to a cross gender search unnecessarily.

## JURISDICTION AND VENUE

1.  The instant action arises under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc et seq., and the First and Fourteenth Amendments.

2.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331.

3.  Venue is proper pursuant to 28 U.S.C. §1391 as to Defendants because Defendants conducts business in this judicial district, and this is the district where a substantial part of the events or omissions giving rise to the claims occurred.

## THE PARTIES

4.  Plaintiff, Ms. Bowe, is an individual, a Muslim woman who wears the Islamic headscarf known as hijab that is proscribed as a sincerely held religious belief. Plaintiff resides in this judicial district.

5.  Defendant City of Ferndale ("Defendant Ferndale") is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of Michigan.

6.  Defendant Chief of Police Dennis Emmi is an individual employed as the Chief of Police with the Defendant City of Ferndale police Department, and upon information and belief is a resident of this judicial district.

7.  Defendant Officer Joshua Little, is an individual employed as a police officer with the Defendant City of Ferndale Police Department and upon information and belief is a resident of this judicial District.

8.  Defendant Officer Stephen Wroe is an individual employed as a police officer with the Defendant City of Ferndale Police Department and upon information and belief is a resident of this judicial District.

9.  Defendant Officer Andrew Wroth is an individual employed as a police officer with the Defendant City of Ferndale Police Department and upon information and belief is a resident of this judicial District.

10. Defendant Sergeant Lauren Zyrowski is an individual employed as a police sergeant with the Defendant City of Ferndale Police Department and upon information and belief is a resident of this judicial District.

## JURY DEMAND

11. Plaintiff demands a trial by jury in this action.

## GENERAL FACTUAL ALLEGATIONS

12. This case is about Defendant City of Ferndale's policy, pattern and practice of removing Muslim women's hijab for booking/mugshot photographs which violates the First Amendment as well as other federal and state law. Pursuant to this policy, pattern, and practice Defendant Ferndale, and all individually named Defendants force arrestees who wear religious head coverings to remove those head

coverings for a photograph, even where doing so violates the arrestees' sincerely-held religious beliefs. This practice alienates and oppresses faith communities throughout the City of Ferndale. It lacks justification and must be changed.

13. Furthermore, Defendant Ferndale required Ms. Bowe to remove her religious outer garment that she wears to prohibit non-family member men from viewing or witnessing her body, body shape, or seeing her any portion of her skin from her neck to the tops of her feet in violation of her sincerely held religious beliefs, and in violation of her legal and constitutional rights.

14. This case is also about Defendant City of Ferndale's policy, pattern, and practice of engaging in cross gender searches and the implementation of unnecessary cross gender searches despite officers of the same gender being present and available during cross gender searches.

15. Furthermore, the individual Defendant's knew that their actions in removing Ms. Bowe's hijab for a booking photo, and removing her religious outer garment, especially in the presence of male officers, and their acts in engaging in cross gender searches while female officers were present and there were no exigent circumstances were a violation of Ms. Bowe's clearly established constitutional rights.

***The Hijab***

16. Ms. Bowe wears a hijab pursuant to her Muslim faith. For the purposes of discussing the Defendants' policy, the term "hijab" is used throughout this complaint

to refer to a garment worn by many Muslim women in various parts of the world; it is a headscarf that covers the wearer's hair, ears, and neck, and frequently part of her chest, but leaves her entire face exposed. In Arabic, the word "hijab" derives from the word "hajaba," sometimes translated as to hide or screen from view or to cover. Wearing a hijab is also known as "covering." Ms. Bowe does not wear a niqab, or a face veil.

17. For many observant Muslim women, the practice of covering entails wearing one's hijab at all times, whether at home or in public, when the wearer is in the presence of men who are not part of her immediate family ("mahram").

18. Furthermore, many Muslim women consider the wearing of hijab to include the covering of one's body in a manner that avoids showing the shape of a woman's body, covers all areas of exposed skin from the neck to the top of the feet, including either the wearing of a religious outer-garment or extremely modest and loose fitting clothing.

19. While women choose to wear the hijab for an array of reasons, many believe that the hijab fulfills the commandments of modesty and devotion that stem from, among other things, the *Qu'ran*, the primary holy book of the Muslim faith, and the *hadith*, the oral traditions carried down from the age of the Prophet Mohammed

(S.A.W.).[1] Ms. Bowe and other women who cover frequently view wearing the hijab as a mandatory aspect of Muslim identity and faith.

20.Ms. Bowe wears the hijab because her their faith dictates that no man outside of a woman's *mahram* should see her uncovered hair, head, and neck. Ms. Bowe presently wears hijab every single day and believes that her religious faith requires her to do so. Ms. Bowe has covered regularly for years. Ms. Bowe's hijab is core to her identity, and it is an essential part of who she is.

21.Being forced to remove one's hijab in public, particularly in the presence of men who do not belong to the wearer's *mahram*, is a profound defilement of the wearer's sincerely-held religious beliefs and a violation of her religious practice. Requiring a Muslim woman to remove her hijab in public is akin to demanding that a secular person strip naked in front of strangers.

22.Defendant Zyrowski is aware of the religious requirements of wearing hijab, and of Ms. Bowe's clearly established constitutional right to wear her hijab in front of all men whom she is not closely related to, and expressed this to the male officers who arrested Ms. Bowe when they originally brought her into the station, prior to Defendant Zyrowski forcing Ms. Bowe to remove her hijab in the presence of male officers prior to taking her mugshot/booking photograph.

---

[1] The phrase "S.A.W." is shorthand for "*salla Allahu 'alayhi wa salam*," a phrase that translates to "God's blessings and peace be upon him" and that is frequently used to express love and respect for the Prophet.

*The Defendants' Unlawful Photograph Policy*

23. Defendant city of Ferndale has a policy, pattern and practice of requiring the removal of religious head wear, including the hijab, to be removed for booking photographs which are taken subsequent to arrest or pursuant to arraignment.

24. Mugshots/ Booking Photos are subject to release pursuant to Michigan's Freedom of Information Act and thus City of Ferndale's policy, pattern and practice creates a permanent public record of women without their religious hijab subjecting them to repeated violations of their sincerely held religious beliefs in a manner that is extremely offensive to religious women who observe the hijab.

25. In addition, Booking Photographs are integrated into other law enforcement databases. Due to this practice, the integration increases the likelihood that images of arrestees without their religious head coverings will be viewed by many people long after the Booking Photograph is taken.

*Federal, State, and Local Governments Across the United States Recognize the Religious Interest in the Hijab and Permit it to be Worn in Official Photographs*

26. The Defendant Ferndale's Photograph Policy contravenes national norms and practices. From the federal to the local level, government and law enforcement entities recognize the significant constitutional and statutory interests at play and permit those in custody to wear religious head coverings for the purpose of official photographs.

27. The United States Department of State permits those who wear hats or head coverings for religious reasons to keep those coverings on in official passport photographs. The Department of State website allows those being photographed to wear a religious hat or head covering if they "submit a signed statement that verifies that the hat or head covering in [the person's] photograph is part of recognized, traditional religious attire that is customarily or required to be worn continuously in public.[2]

28. Similarly, the United States Citizenship and Immigration Services ("USCIS") issued a policy memorandum on July 23, 2012 that permits religious head coverings to be worn in photographs. The memorandum states that "USCIS will accommodate an individual who wears headwear as part of their religious practices."[3] Should a head covering cast a shadow over the wearer's face or otherwise obscure part of their face, USCIS will "ask individual to remove or adjust portions of religious headwear that covers all or part of individual's face." In this situation, USCIS will offer the wearer a private room or screened area in which to adjust their head covering as well as a photographer of their gender. The religious head covering in question "is allowed to cover the ears if USCIS can still identify the individual."

---

[2] *See* http://www.nydailynews.com/new-york/nyc-crime/nypd-ripped-abusing-facial-recognition-tool-article-1.3847796.
[3] *Available at* https://ru.usembassy.gov/u-s-citizen-services/passports/photos/.

29. The *Michigan Vehicle Code*, Sections 28.292 and 257.310 also permits an applicant for a driver's license to keep her hijab on while having her official driver's license photograph taken; as long as it does not touch the person's eyebrows.

30. The Dearborn Heights, Michigan, the Police Department changed its booking procedures in July 2015 after a woman was forced to remove her hijab in the presence of men during the booking photograph and while in custody. The Police Department implemented reform after that woman filed suit alleging violations of her religious rights. According to the updated policy, Muslim women are not required to remove religious head coverings like hijabs for any booking photographs. At least one additional lawsuit has been settled under the new policy, which recognizes the substantial religious interests of women who wear hijabs.

31. In a lawsuit against the City of Dearborn Heights, the 6th Circuit upheld the policy because of the clear privacy and religious right of the Muslim women has in religious practice. The 6th Circuit found that the releasing the booking photograph of a Muslim woman without her hijab would be a clear unwarranted invasion of the woman's privacy. The booking photograph without religious head covering would not be made available to the public because it would violate the establishment clause of the First Amendment.

32. Michigan Department of Corrections recently updated their own prisoner photograph policy to allow the wearing of religious headwear, including hijab, for prisoner identification photographs.[4]

33. Law enforcement officials across the country have likewise recognized the right of citizens to wear hijabs or other religious head coverings while being photographed for official government purposes.

34. In Long Beach, California, the City Council approved a July 2017 settlement between a woman required to remove her hijab for a post-arrest photograph and the Long Beach Police Department that amended the Department's official policy so as to accommodate persons who wear religious head coverings. The Department is no longer permitted to forcibly remove the hijabs of female arrestees at any point while they are in custody.

35. In amending its policy, Long Beach joined two neighboring jurisdictions, San Bernardino County and Orange County, which adopted policies protecting detainees who wear religious head coverings following lawsuits that settled in 2008 and 2013 respectively.

36. In Hennepin County, Minnesota — the county that includes Minneapolis — the Sheriff's Office implemented a new policy for inmates at the Hennepin County

---

[4] While the MDOC's photograph policy has been updated, the new policy is scheduled to take effect on November 29, 2021.

Jail and those in custody throughout Hennepin County in March 2014. The policy permits female arrestees to keep their hijabs on while a booking photograph is taken and provides that the hijab can be pushed back slightly off of the wearer's face if necessary. Inmates at the County Jail are permitted to wear hijabs while incarcerated.

37. In Portland, Maine, Cumberland County Sheriff Kevin Joyce publicly apologized after releasing the booking photographs of two Muslim women who had been arrested at a Black Lives Matter protest. The photographs showed each woman without her hijab; Joyce offered his "sincerest apologies…to the Muslim community for the appearance that we are disrespecting their religious beliefs and practices."[5] The Cumberland County Jail procedures require a woman to remove her hijab only in private, without men present, and provide that two booking photographs will be taken, one with the woman's hijab and another without.

38. Each of these examples reflects a growing national consensus that there is no basis to require the removal of religious head coverings for official government photographs.

39. Even the New York Police Department has recognized the harm its Photograph Policy may cause Muslim women. Three Muslim women reached a settlement with the City on February 26, 2018, pursuant to which the City agreed to

---

[5] Available at https://www.pressherald.com/2016/09/14/sheriffs-office-apologizes-for-improperly-releasing-photos-of-muslim-protesters/.

pay $180,000 in damages for the forced removal of the women's hijabs pursuant to the Photograph Policy.[6] Upon information and belief, however, the Photograph Policy remains in place despite this settlement. Even if a Muslim woman is able to have her Booking Photograph taken in private by another woman at One Police Plaza, the Booking Photograph itself remains in the NYPD's database indefinitely — available to all who access the computer system or the woman's paper file.

***The City of Ferndale Police Department's Unlawful Photograph Policy Forces Muslim Women to Violate Their Religion***

40. Federal legislation has been enacted to demonstrate our robust national commitment to the free exercise of religion and to prohibit the government from placing a substantial burden on religious beliefs. This legislation, which reflects an increased awareness of and support for religious interest in practices like covering, "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by … the Constitution." 42 U.S.C. § 2000cc-3(g). The statute even "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." Id. § 2000cc-3(c).

41. In contravention of this legislation and the tolerant, inclusive policies it embodies, the Defendants' Photograph Policy pattern and practice has had an extensive and corrosive effect of Muslim-American women in the city of Ferndale—

---

[6] *Available at* https://www.nytimes.com/2018/02/28/nyregion/muslim-hijab-nypd.html.

and, upon information and belief, on other City of Ferndale residents who wear religious head coverings and are arrested by Ferndale Police Department (FPD).

42. Indeed in this case, the City of Ferndale's unlawful photograph policy affected Ms. Bowe despite the fact that she had no direct connection to the city of Ferndale at all, as she was stopped as a result of the individual Defendants dragnetting exclusively within the city of Ferndale and pulling over individuals who had no nexus with the city of Ferndale other than to be close to the border with Ferndale.

43. Moreover, the Photograph Policy is a profound manifestation of insensitivity towards religious practices and interests. In today's post-9/11 climate, there is widespread hostility towards and baseless fear of Muslim-Americans. In the context of this increasingly polarized setting, it is incumbent on this City's law enforcement to increase awareness of and sensitivity towards the Muslim-American community by setting an example in their arrest and booking practices. The Photograph Policy pattern and practice has precisely the opposite effect.

44. The Defendants' Photograph Policy pattern and practice substantially impacts the citizens of Defendant Ferndale. The Photograph Policy custom is to force Muslim-women to forcibly remove their hijabs for the Booking Photograph while in custody and that the Photograph Policy pattern and practice had violated their constitutional and statutory rights.

***Helana Bowe is Subjected to the Defendant's  Photograph Policy***

45.Ms. Bowe was forced to remove her hijab against her will and religion, pursuant to the Photograph Policy pattern and practice.

***Helana Bowe is Forced to Remove Her Hijab at City of Ferndale Police Station for a Photograph***

46.On June 21, 2021, Ms. Bowe was traveling eastbound on Eight Mile Road inside the city of Ferndale.

47.While stopped at a traffic light, inside the city of Ferndale, Defendant Ferndale's police officer, while engaged in his official duties, pulled up next to Ms. Bowe's vehicle and then reversed and got behind her vehicle and ran her license plate through his computer despite Ms. Bowe having engaged in no traffic violations and despite Ms. Bowe never having crossed into the city of Ferndale.

48.Subsequent to running Ms. Bowe's license plate, Defendant Wroe engaged Ms. Bowe in a traffic stop alleging that she had an expired license plate tag despite her having a valid plate on the car and being able to produce a valid and current vehicle registration pursuant to the stop.

49.Ms. Bowe notified Defendant Wroe that she had a taser in her purse that she had obtained as a result of being mugged in the parking lot of the Meijer store located

at Eight Mile and Woodward Ave. in Ferndale, the very same location where Defendant Wroe had pulled Ms. Bowe over for a traffic stop.

50. Subsequent to notifying Defendant Wroe of the taser, Ms. Bowe was arrested and taken to Defendant Ferndale's police department.

51. Upon her arrival at the Defendant Ferndale's police department, Defendant Zyrowski asked Ms. Bowe about her hijab and confirmed that Ms. Bowe wore it pursuant to her sincerely held religious beliefs.

52. After confirming with Ms. Bowe that she indeed wore the hijab pursuant to her religion, Defendant Zyrwoski notified the arresting officers that they were in no way allowed to remove or disturb Ms. Bowe's hijab as it was her constitutional right to wear it.

53. Once Ms. Bowe was taken into custody, pursuant to Defendant Ferndale's Policy, Ms. Bowe was forced to remove her religious outer-garment by and in front of male officers, including named Defendants.

54. Furthermore, despite Defendant Zyrowski's acknowledgement of Ms. Bowe's relgious, constitutional and legal rights to wear her hijab without disturbance, Defendant Zyrowski forced or otherwise coerced Ms. Bowe into removing her hijab for a booking photo which was taken in the presence of male officers.

55. At multiple instances, Ms. Bowe made her dissent and protest to the forceful removal of her hijab extremely clear. Ms. Bowe asserted her right to keep her hijab

on for the photograph because it is representative of a sincerely-held religious belief, as a Muslim-woman.

56. Defendants' officers refused to accommodate Ms. Bowe's reasonable request.

57. Additionally, as further evidence that individually named Defendants especially Defendants Wroe and Zyrowski were aware that their actions violated Ms. Bowe's clearly established constitutional rights, Ms. Bowe's original mugshot photos were taken with her hijab on, but Defendant Zyrowski told Ms. Bowe that if she would allow them to take a mugshot photo of her without her hijab on, they would release her to go home that evening, otherwise, Ms. Bowe was going to be required to remain in the jail for night.

58. Ms. Bowe protested the taking of her mugshot without her hijab, and especially in front of the male officer who was still present. However, Defendant Zyrowski told Ms. Bowe, she would take the photograph and eventually Ms. Bowe relented so that she could be released and not have to remain in jail overnight.

59. Upon information and belief the male officer remained in the booking room where he had full view of Ms. Bowe in the booking cell while her hijabless photograph was taken.

60. It is clear that Ms. Bowe was threatened with a night in jail if she failed to acquiesce to individually named Defendants' demands to remove her hijab for a booking photograph.

***Helana Bowe is Unnecessarily Subjected to Two Cross Gender Searches***

61. Additionally, on the date of her original arrest, Ms. Bowe was subjected to a cross gender search upon her arrest and while at the Defendant Ferndale's police department.

62. Ms. Bowe's cross gender search was conducted by Defendant Wroe while Defendant Zyrowski was present and in full view, and while Ms. Bowe was pleading with both Defendants to have the search conducted by Defendant Zyrowski who was a female officer capable of conducting a same gender search.

63. Additionally, Ms. Bowe, after learning that she had been indicted on charges stemming from the taser she was carrying on June 21, 2021 turned herself into the Defendant Ferndale's police department on July 8, 2021, where she was once again subjected to a cross gender search by Defendants Wroth and another unknown officer despite the fact that female officers were present and capable of conducting the search.

64. Ms. Bowe's humiliation caused by the traumatic event did not end after Ms. Bowe was released from  Defendant Ferndale's custody. Booking Photographs are discoverable by simply submitting a Freedom of Information Act Request. Ms. Bowe's booking photograph was released by Defendant Ferndale when there was a request for access.

65. Like many Muslim women whose religious beliefs dictate that they wear a hijab, Ms. Bpwe felt exposed and violated without hers. It is as if Ms. Bowe was naked in a public space.

66. Ms. Bowe endured insurmountable amount of humiliation and trauma as a direct result of the Defendants' pattern and practice. This policy is unnecessarily discriminatory and the existence of Ms. Bowe's booking photograph and the fact that it can be viewed again and again by men who are not members of her immediate family is haunting.

67. Since these incidents, Ms. Bowe suffers from anxiety and depression and has suffered a loss of enjoyment of her everyday activities and family life.

### FIRST CAUSE OF ACTION
### (Forcible Removal of Plaintiff's Hijab)

### The Religious Land Use and Institutionalized Persons-
### (42 U.S.C. § 2000cc)
### (As To All Entity Defendants and Individual Defendants in Their Official and Individual Capacity)

68. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

69. The RLUIPA provides, in relevant part, the following: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that

the imposition of the burden that person- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2).

70. Plaintiff is a "person" as defined under the RLUIPA. See 42 U.S.C. § 2000cc-1(a) and 42 U.S.C. § 1997(3).

71. Plaintiff's decision to wear hijabs constitute a sincerely-held religious belief.

72. At all relevant times, Defendants met the definition of "government" under RLUIPA. See 42 U.S.C. § 2000cc-5(4)(A)(i)-(iii).

73. At all relevant times, the locations where the city of Ferndale take Booking Photographs, including, but not limited to, the city of Ferndale Police Department, where the event alleged in this complaint transpired, are federally-funded "institutions" as defined under the RLUIPA and the Civil Rights of Institutionalized Persons Act of 1980 ("CRIPA"), 42 U.S.C. § 1997(1)(B)(ii)-(iii).

74. At all relevant times, Plaintiff was "residing in or confined to institutions" as defined under the RLUIPA when the events alleged above transpired.

75. The Defendants' acts or omissions, policies, and customs substantially burdened Plaintiff's religious exercise by requiring them to remove her hijab to be photographed while she was residing in or confined in Defendant DDC.

76. The Defendants' acts or omissions, policies and customs substantially burdened Plaintiffs' religious exercise by creating a permanent public record her

image without her hijab which has been and can continue to be released to the public without intervention of the Court.

77. Defendants' acts, omissions, policies and customs substantially burden Plaintiff's religious exercise by requiring Ms. Bowe to wear the offending picture on her wrist and presenting that picture to male staff and guards and the act of male guards observing her hijabless photo while she was residing in or confined in DDC.

78. The wearing of the hijab is so common place and universally understood as a religious practice of Muslim women that individually named Defendants had actual knowledge that their actions, and the booking photo policy requiring the hijab to be removed  were in violation of Ms. Bowe's sincerely held religious beliefs in violation of the U.S. Constitution and RLUIPA.

79. Clearly in this instant case, Defendant Zyrowski  had actual knowledge that her actions were in violation of Ms. Bowe's clearly established constitutional right.

80. Defendants' acts or omissions, policies, and customs do not further a compelling government interest.

81. Defendant Emmi, in his official roles are substantially and primarily responsible for the adoption, enactment, and enforcement of the illegal and unconstitutional booking photo policies and practices in violation of Ms. Bowe's sincerely held religious beliefs.

82. Defendants acts or omissions, polices, and customs are not the least-restrictive means of furthering a compelling government interest.

83. As a direct proximate result of Defendant Ferndale and individually named Defendant's wrongful acts and omissions, Plaintiff has sustained damages, and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

**SECOND CAUSE OF ACTION**
**(Forceable Removal of Plaintiff's Hijab)**

**Free Exercise Clause**
**(42 U.S.C. § 1983)**
**(As To Entity Defendants and Individual Defendants in Their Official and Individual Capacity)**

84. Plaintiff repeats and alleges the above paragraphs as if the same were fully set forth at length herein.

85. 42 U.S.C. § 1983 prohibits any person acting under color of state law, custom, or usage to deprive a citizen of rights secured by the Constitution.

86. At all relevant times, all named Defendants acted under color of state law.

87. Under the First Amendment to the Constitution of the United States of America, Plaintiff has the right to freely exercise their religion.

88. By forcing Plaintiff to remove her hijab for the Booking Photograph, Defendants deprived Plaintiff of her right to freely exercise her religion in contravention of the Free Exercise Clause.

89.Defendant Emmi, in his official roles are substantially and primarily responsible for the adoption, enactment, and enforcement of the illegal and unconstitutional booking photo and wristband policies in violation of Ms. Bowe's sincerely held religious beliefs.

90.The wearing of the hijab is so common place and universally understood as a religious practice of Muslim women that Defendants Washington and DeAngelo had actual knowledge that their actions, and the booking photo policy requiring the hijab to be removed were in violation of Ms. Bowe's sincerely held religious beliefs.

91.Defendants acts or omissions, policies, and customs do not further a compelling government interest.

92.As a direct and proximate result of all named Defendants unlawful discriminatory conduct, Plaintiff has sustained damages, and has suffered and continue to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

### THIRD CAUSE OF ACTION
### (Forceable Removal of Plaintiff's Hijab)

### Michigan State Constitution
### (Article 1, Section 4)
### (As To Entity Defendant and Individual Defendants in Their Official and Individual Capacity)

93.Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

94. Article 1, Section 4 of the Constitution of the State of Michigan provides that: "Every person shall be at liberty to worship God according to the dictates of his own conscience."

95. Defendant Ferndale and Defendant DDC and Defendant MDOC's policy requiring that arrestees who wear religious head coverings remove those head coverings to be photographed violates Article 1, Section 4 by disallowing the free exercise of religion.

96. Defendants Ferndale, DDC and MDOC's policy requiring that arrestees who wear religious head coverings wear their booking photo without the religious head covering on a wristband to be presented to and viewed by male staff and officers violates Article 1, Section 4 by disallowing the free exercise of religion.

97. Defendants Washington and DeAngelo, in their official roles are substantially and primarily responsible for the adoption, enactment, and enforcement of the illegal and unconstitutional booking photo and wristband policies in violation of Ms. Bowe's sincerely held religious beliefs.

98. The wearing of the hijab is so common place and universally understood as a religious practice of Muslim women that Defendants Washington and DeAngelo had actual knowledge that their actions, and the booking photo and wristband policies were in violation of Ms. Bowe's sincerely held religious beliefs in violation of the Michigan Constitution.

99. Defendants acts or omissions, policies, and customs do not further a compelling government interest.

100.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has sustained damages and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

## FOURTH CAUSE OF ACTION
### (Forcible Removal of Plaintiff's Hijab)

### Declaratory Judgment
### (Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201-02)
### (As to Entity Defendants and Individual Defendants in Their Official Capacity)

101.    Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

102.    Defendants' conduct was intentional and made with reckless indifference to Plaintiffs' religious rights.

103.    Plaintiffs' rights to the free exercise of religion were infringed upon and substantially burdened by Defendants' conduct.

104.    Defendants' policy and custom of forcing the removal of religious head coverings for post-arrest photographs, including the hijab worn by Ms. Bowe, is an unlawful and unconstitutional practice that infringes upon the rights of Plaintiff and other Muslim women and religious adherents to freely exercise their religion without the interference of substantially burdensome government conduct.

105.     Defendants' policy and custom of forcing women who wear religious head coverings to wear photographs of themselves without their head covering to be presented to and viewed by male officers and staff, including the hijab worn by Ms. Bowe, is an unlawful and unconstitutional practice that infringes upon the rights of Plaintiff and other Muslim women and religious adherents to freely exercise their religion without the interference of substantially burdensome government conduct.

106.     Defendants policy, practice, and custom caused and continue to cause Plaintiff and other Muslim Women and religious adherents harm.

107.     Defendant Emmi, in his official role is substantially and primarily responsible for the adoption, enactment, and enforcement of the illegal and unconstitutional booking photo policy in violation of Ms. Bowe's sincerely held religious beliefs.

108.     The wearing of the hijab is so common place and universally understood as a religious practice of Muslim women that Defendants had actual knowledge that their actions, and the booking photo policy requiring the hijab to be removed,  were in violation of Ms. Bowe's sincerely held religious beliefs  in violation of the U.S. Constitution and RLUIPA.

109.     Defendants' acts or omissions, policies, and customs do not further a compelling government interest.

110.     Plaintiff is entitled to a declaratory judgment that Defendants infringed upon and substantially burdened Plaintiffs religious free exercise and continue to substantially burden the religious free exercise of other, similarly-situated Muslim women and religious adherents in violation of federal and state law and the United States Constitution.

111.     Plaintiff has a strong likelihood of succeeding on the merits of their claims.

### FIFTH CAUSE OF ACTION
### (As to the Cross Gender Search and Removal of Plaintiff's Religious Outer-Garment)

### Violation of the Fourth Amendment
### 42 U.S.C. §1983- Illegal Search and Seizure
### (As to Entity Defendants and Individual Defendants in their Official and Individual Capacities)

112.     Plaintiff realleges and incorporate by reference each and every previously pled paragraph as if fully set forth herein.

113.     The Fourth Amendment to the United States Constitution establishes that Plaintiffs have a right to be free from the deprivation of life, liberty, and bodily security without due process of law and to be free from unreasonable searches and seizures and excessive force.

114.     42 U.S.C. §1983 provides a vehicle for a private cause of action against state actors who engage in activities that violate an individual's rights guaranteed by the United States Constitution or an amendment to the Constitution.

115.    At all material times, Defendants acted under color of law and unreasonably when the violated Plaintiffs' Fourth Amendment Rights when they engaged unnecessarily in a cross gender search of  Plaintiff without exigent circumstances.

116.    At all times pertinent to this Complaint, Defendants were "state actors" as that phrase is identified under 42 U.S.C. §1983.

117.    That while acting under the color of state law, Defendants, acting individually and in concert with other Ferndale Police officials who they were directing and controlling, violated Plaintiff's rights under the United States Constitution protected by the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution including, but not limited to the following:

a.  Arresting and/or detaining Plaintiff;

b.  Forcibly removing Plaintiff's hijab for a booking photograph in view of male officers;

c.  Forcibly removing Plaintiff's religious outer-garment in view of maile officers;

d.  Engaging unnecessarily in cross-gender searches despite female officers being present and able to engage in a search and in the absences of exigent circumstances;

e.  Such other and unconstitutional conduct as may be uncovered by this litigation.

118.    Defendants acted under color of law and are not entitled to qualified immunity because they violated Plaintiff's clearly established Fourth Amendment rights to be free from unreasonable search and seizures.

119.    Defendants' illegal and unconstitutional acts were the direct and proximate cause of Plaintiff's deprivation of their constitutional rights.

120.    Due to Defendants' actions, Plaintiffs' Fourth Amendment rights were violated pursuant to 42 U.S.C. § 1983, Plaintiff respectfully requests this Honorable court to award, exemplary, compensatory, and punitive damages plus costs and attorney fees as set forth in 42 U.S.C. §1988.

## SIXTH CAUSE OF ACTION

### City of Ferndale's Constitutional Violations

121.    Plaintiff realleges and incorporates by reference each and every previously pled paragraph as if fully laid forth herein.

122.    Defendant City of Ferndale acted recklessly and/or with deliberate indifference when it practiced and/or permitted customs, policies, and/or practices that resulted in constitutional violations of Plaintiffs.

123.    These customs, policies, and/or practices included but were not limited to the following:

a. Failing to train and/or supervise its officers so as to prevent violations of citizens' constitutional rights;

b. Failing to supervise, review, and/or discipline officers;

c. Failing to supervise, review and/or discipline officer whom the City of Ferndale knew or should have known were violating or prone to violate citizens' constitutional rights, thereby permitting and/or encouraging its police officers to engage in illegal conduct;

d. Failing to control and/or discipline police officers known to harass, intimidate or abuse citizens;

e. Failing to control and/or discipline police officers known for racial and religiously profiling citizens in a manner that is unconstitutional and violates citizens' rights;

f. Failing to train and/or supervise police officers regarding legal execution of searches and/or seizures;

g. Failing to train and/or supervise its police officers regarding the use of excessive force;

h. Having a custom, policy, and/or practice of falsely arresting and/or illegally detaining citizens that have no nexus with the city of Ferndale;

    i.   Failing to train and/or supervise its police officers regarding their duty to protect the religious and constitutional rights of persons in their custody.

124.    Defendant City of Ferndale's conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury resulted.

125.    Defendant City of Ferndale's deliberately indifferent acts and/or omissions were the direct and proximate cause of Plaintiffs' injuries and damages.

126.    Plaintiffs have a viable claim for compensatory and punitive damages pursuant to 42 U.S.C. §1983, together with costs and attorney fees pursuant to 42 U.S.C. §1988.

## SEVENTH CAUSE OF ACTION

### Gross Negligence

127.    Plaintiff reallege and incorporates by reference each and every previously pled paragraph as though it were laid forth herein.

128.    Defendants had a duty to perform their employment activities so as not to endanger or harm Plaintiffs.

129.    However, Defendants breached that duty by acting indifferently or grossly negligent without regard to Plaintiff's welfare.

130.    Defendants knew or should have known that by breaching these duties, harm would come to Plaintiff.

131.     That according to MCL 691.1407(2), the breach of Defendants' duty to exercise reasonable care was reckless and amounts to gross negligence.

132.     That as a direct and proximate result of Defendants' indifferent/grossly negligent acts and/or omissions, Plaintiffs suffered damages.

**WHEREFORE**, Plaintiff respectfully request judgment against DEFENDANTS as follows:

a) Declaring that Defendants' discriminatory practices violate the RLUIPA, 42 U.S.C. § 2000cc et seq.; the Free Exercise Clause of the First Amendment to the United States Constitution; and Article 1, Section 3 of the MI CONST;

b) Enjoining all named Defendants, Defendants agents, employees, and successors, and all other person in active concert or participation with Defendant from requiring the removal of any religious head or hair coverings for the purpose of post-arrest photographs;

c) Requiring Defendants to adopt nondiscriminatory policies and practices to prevent encroachment on the religious rights of arrestees and detainees in the future;

d) Permanently enjoin all Defendants from ever again disseminating Ms. Bowe's hijabless booking photo to any member of the public or other governmental agency;

e) Order that the City of Ferndale permanently remove Ms. Bowe's hijabless booking photo from the public record and their own internal records to ensure that the photo will never again be viewed by men whether members of the public or are agents and employees of Defendants;

f) Awarding such damages to Plaintiff as will fully compensate her for the loss of rights and emotional distress suffered due to Defendants' unlawful conduct;

g) Awarding punitive damages to Plaintiff;

h) Awarding Plaintiff reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

i) Granting Plaintiff such other further relief as may be just and proper.

Dated:  October 29, 2021                    Respectfully Submitted,

CAIR-MI LEGAL FUND

/s/

By: Amy V. Doukoure (P80641)
Attorney for Plaintiff
1905 S. Haggerty Rd. Suite 105
Canton, MI 48188
(248) 559-2247
adoukoure@cair.com